UNITED STATES of America, Plaintiff-Appellee,

v.

Hershel Doyle MARTIN, Defendant-Appellant.

No. 76–1664.

United States Court of Appeals, Sixth Circuit.

Argued Oct. 5, 1976.

Decided Nov. 2, 1976.
Certiorari Denied Jan. 10, 1977.
See 97 S.Ct. 762.

**578**

Joe A. Dycus, Asst. Federal Public Defender, Memphis, Tenn., for defendant-appellant.

Thomas F. Turley, Jr., U. S. Atty., Michael B. Neal, Memphis, Tenn., for plaintiff-appellee.

Before PHILLIPS, Chief Judge, and McCREE and LIVELY, Circuit Judges.

McCREE, Circuit Judge.

Hershel Doyle Martin was convicted by a jury of violation of 18 U.S.C. § 371 and sentenced to one year and one day, to be served concurrently with another sentence he was already serving. The indictment charged him with violating § 371 by conspiring in the Western Districts of Tennessee and Arkansas, and in other places, with others to deal in, possess and pass counterfeit money in violation of 18 U.S.C. §§ 472, 473.

Martin raises two issues in this appeal. First, he contends that regardless of any crimes that he may have committed in Arkansas, the evidence was insufficient to show his participation in the overall conspiracy, which included overt acts in Tennessee. Second, he argues that he was denied his Sixth Amendment right to a speedy trial.

The evidence showed that Martin sold counterfeit bills on consignment to John Wayne Roberts in Arkansas. Roberts was to pay Martin for those bills if and when Roberts sold them to others. Roberts sold them to Jerry Evans and Robert Kimball, who passed them in the Western District of Tennessee.

Martin contends that because he was unaware that Roberts would sell the counterfeit currency to individuals who would pass it in Tennessee, he cannot be convicted of conspiracy with the individuals who sold in Tennessee. Furthermore, he argues that because Roberts was unaware that Evans and Kimball would pass the bills in Tennessee, neither Roberts nor, perforce, appellant could have conspired with them to possess and pass counterfeit currency in Tennessee.

Martin relies upon our recent decision in *United States v. Bostic*, 480 F.2d 965 (6th Cir. 1973), and upon Judge Learned Hand's opinion in *United States v. Peoni*, 100 F.2d 401 (2d Cir. 1938). That reliance, however, is misplaced.

In *Bostic*, Bartlett was indicted for participation in a conspiracy with Bostic and several others to possess and pass counterfeit currency. The evidence showed, and weakly at that, only that Bartlett had sold counterfeit money to Bostic on one occasion. It was not demonstrated that Bartlett was aware that Bostic was or would be a participant in a conspiracy to possess and pass the currency with any other persons, not to speak of the particular persons in particular places who were charged in the indictment. The court therefore held that the evidence was insufficient to prove that Bartlett had conspired with Bostic *and others* to possess and pass counterfeit.

In *Peoni*, it was shown only that Peoni had sold a quantity of counterfeit bills to Regno, and that Regno had sold them to Dorsey, who was caught trying to pass them. It was not proved that Peoni was aware that Regno would *sell* the bills to another person, who would then pass them. After Regno had paid Peoni on the spot, Peoni had neither knowledge nor interest in what would be done with the bills next. The court therefore held that the evidence was insufficient to show that Peoni had conspired with Regno that *Dorsey* would possess the bills in violation of the statute.

Martin, however, knew that Roberts did not intend personally to pass the bills to unsuspecting people, but instead to sell them to other persons who would dispose of them. Indeed, Martin was not to be paid until Roberts had sold the bills. Although

Martin did not know to whom the bills would be sold, or where or how the persons to whom Roberts sold the bills would possess and dispose of them illegally (whether by passing them individually or by further bulk selling), the evidence showed that Martin was a participant in the conspiracy, which included Roberts, Evans, and Kimball.

The fact that Evans and Kimball committed overt acts in the Western District of Tennessee in furtherance of this overall conspiracy supported the determination that the conspiracy operated there. The indictment did not charge that one of the objects of the conspiracy was to commit overt acts in any particular place. Roberts' and Martin's ignorance of the place where the bills would be distributed is therefore immaterial to the charge.

Martin's second contention is that he was denied his Sixth Amendment right to a speedy trial. He was originally charged with the activities which are the subject of this indictment in August 1972. Those charges were dismissed in January 1973. This indictment was filed in December 1974. Martin was tried and convicted in December 1975.

The Sixth Amendment right to a speedy trial does not attach until the formal charge, the trial of which is alleged to have been inordinately and prejudicially delayed, is made. *United States v. Marion*, 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971). Because there was no indictment which could have been tried in the period between January 1973 and December 1974, we cannot say that a speedy trial was delayed during that time. The remaining time is not remotely comparable to the five year delay which provoked the analysis in *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). Even if we were to include the five months between the filing and dismissal of the earlier charges in this case, the total period of delay would still be less than the time between Barker's first objection to delay and Barker's trial. Even that period was insufficient to show a violation of Barker's Sixth Amendment rights.

The conviction of defendant Martin is therefore AFFIRMED.