**Paul Clifford HILL, Petitioner-Appellant,**

v.

**Louie L. WAINWRIGHT, etc.,
Respondent-Appellee.**

No. 79–1038.

United States Court of Appeals,
Fifth Circuit.

May 5, 1980.

Richard P. Condon, Ellen M. Condon, Tampa, Fla., for petitioner-appellant.

Michael A. Palecki, Tampa, Fla., for respondent-appellee.

Before TUTTLE, BROWN, and TATE, Circuit Judges.

TATE, Circuit Judge:

The petitioner, having exhausted his available state remedies, seeks federal habeas corpus pursuant to 28 U.S.C. § 2254 to invalidate his Florida robbery conviction and sentence to life imprisonment. The petitioner asserts three claims for habeas corpus relief: (1) denial of his right to a speedy trial; (2) failure of the prosecution to disclose evidence favorable to the defense; and (3) denial of effective assistance of counsel. The federal district court after an evidentiary hearing dismissed the habeas petition on the merits. We find no merit in any of the petitioner's claims and, consequently, affirm.

*Facts Relating to the Speedy Trial Contention*

The most substantial issue concerns the petitioner's claim that his constitutional right to a speedy trial was violated by the state's failure to try him after his arrest in February, 1969 until June 3, 1971, despite his alleged repeated requests for an earlier trial.

We have attached as an appendix to this opinion a detailed chronology which both parties accept as accurate. It shows, relevantly to our decision of this appeal, that following the Florida robbery of June, 1968, the petitioner Hill could not be located until he was arrested in Illinois for an unrelated crime in February, 1969. On March 11, 1969, he was sentenced to a 10–15 year sentence on the Illinois charges. We are cited to no reason that Florida could have moved to try him before that date, at the earliest.

On June 19, 1969, a Florida warrant was transmitted to the warden in Illinois. Thereafter (August 12, September 18, and September 29), the petitioner wrote various officials in Florida requesting a speedy trial. The last of these requests was referred to the State's Attorney for the County, who eleven days later wrote Hill advising him to contact the Public Defender for a speedy trial.

On November 6, 1969, a motion was filed in Florida state court by the petitioner—not for an immediate trial—but to dismiss the Florida robbery charge for want of prosecution. (This motion was thus filed less than three months after the petitioner had first requested a trial on the Florida charges, which request was itself made less than five months after the arrest.) Thereafter, as will be shown more fully below, the petitioner consistently sought from appellate courts, not a speedy trial, but solely the dismissal of the charges against him (for the alleged failure to try him some time after March 11, 1969,[1] when he was convicted in Illinois, and November 6, 1969, when he filed his motion to dismiss the charges against him.) These petitions were filed on March 27, 1970 and September 30, 1970 to the Florida Supreme Court, and on December 16, 1970, to the United States Supreme

---

1. The petitioner based his claim on the delay commencing with the Florida warrant issued June 26, 1968 on the Florida robbery charges. As we earlier noted, the state could not under any circumstances be charged for delay during the period he was a fugitive from justice and for the month he was held after his arrest for and until his conviction on Illinois felony charges on March 11, 1969.

Court. When the latter tribunal denied certiorari on April 19, 1971, Hill's trial was held on June 3, 1971, within seven weeks of the denial.

Ultimately, a central reason for our holding that the defendant's speedy trial rights were not violated is that the delay of the state in bringing him to trial between November 6, 1969, and April 19, 1971, was occasioned by his own pleadings and reiterated appellate petitions insisting, not that he be tried, but that he be *not* tried and that instead the charges be dismissed.

Hill suggests that, since no stay had been issued, the state should have proceeded to try him, despite his strenuous contentions that it no longer had any constitutional right to do so. It is, at best, a dubious proposition that, over his protest, the state could have insisted on trying him despite the pendency of proceedings in an appellate court urging that the state had no constitutional right to subject him to trial but, instead, must dismiss the charges. *Cf. Abney v. United States*, 431 U.S. 651, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977). The state's position, thus, is that Hill, instead of attempting to obtain a speedy trial, was attempting to construct a technical speedy-trial defense to avoid a trial and conviction. Moreover, despite the state's sluggish response to Hill's earlier requests for trial (which were misdirected by him to state officials other than the local prosecutor), the state was thereafter responsive when Hill (contrary to his stance in a then pending Florida Supreme Court petition) indicated a desire for trial. When Hill wrote the local prosecution on November 21, 1970 requesting an immediate trial, extradition proceedings were commenced within two weeks (twelve days later Hill filed a petition for certiorari with the United States Supreme Court requesting dismissal of the Florida warrant for want of prosecution), and the state set the charge for trial on March 23, 1971 seven weeks after Hill was returned to Florida on January 31. This trial was continued, on Hill's motion of March 17 to stay his trial pending decision by the United States Supreme Court on his petition for certiorari. As noted, trial was commenced on June 3, soon after the high Court denied certiorari on April 19.

### 1. *Speedy Trial*

The petitioner contends that his constitutional right to a speedy trial was denied by the State of Florida because of the nearly three year delay (two years eleven months and one week) between the original arrest warrant and his trial.

■ The Sixth Amendment provides that "in all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial . . . ." The Sixth Amendment guarantee of a speedy trial prevents undue and oppressive incarceration prior to trial, minimizes anxiety and concern accompanying public accusation, and limits the possibilities that long delay will impair the ability of an accused to defend himself. *United States v. Ewell*, 383 U.S. 116, 120, 86 S.Ct. 773, 776, 15 L.Ed.2d 627 (1966). The right to a speedy trial has been held applicable to the states by the Due Process Clause of the Fourteenth Amendment. *Klopfer v. North Carolina*, 386 U.S. 213, 87 S.Ct. 988, 18 L.Ed.2d 1 (1967).

■ In resolving a speedy trial claim, the courts usually employ the balancing process enunciated in *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). *Barker* directs a court faced with a speedy trial issue to weigh factors that include the following: (a) the length of delay; (b) the reason for delay; (c) the defendant's assertions of his right; and (d) the prejudice to the defendant. On the present facts, we conclude that the State of Florida tried Hill promptly enough, and that the "unsatisfactorily severe remedy of dismissal" is not appropriate in this case. *Id.* at 522, 92 S.Ct. at 2188.

### A. *Length of Delay*

■ The period of delay starts when a person is accused of a crime and ends when the trial begins. *United States v. Marion*, 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971). The arrest, if prior to the indict-

ment, constitutes the initiation of a prose-cution for purposes of applying the *Barker* speedy trial test. *Dillingham v. United States*, 423 U.S. 64, 96 S.Ct. 303, 46 L.Ed.2d 205 (1975).

This petitioner became an accused and his right to a speedy trial was therefore acti-vated on June 26, 1968 when the arrest warrant was issued. Here the delay of nearly three years serves as a "triggering mechanism" to invoke further analysis. *Barker v. Wingo, supra*, 407 U.S. at 530, 92 S.Ct. at 2192.

### B. *Reason for Delay*

Closely related to the length of delay is the reason the government assigns to justi-fy the delay. If the postponement is occa-sioned by the actions of the accused himself, the delay (or any relevant portion of it) may be excused. *United States v. Herman*, 576 F.2d 1139, 1145 (5th Cir. 1978); *Torres v. Florida*, 477 F.2d 555, 556 (5th Cir. 1973).

There are varying reasons for the delays between arrest and trial in this case. We conclude that more than two years of the delay is attributable to the petitioner. The state could not, at most, be charged for more than seven to nine months of the delay.

█ The period of delay between June 26, 1978 and February 7, 1969, approximate-ly seven and one-half months, should not be charged against the government since Hill was at large during that period. *United States v. Walters*, 591 F.2d 1195, 1202 (5th Cir. 1979). *Cf.* 18 U.S.C. § 3161(h)(3)(A) (Speedy Trial Act of 1974) (period of delay resulting from absence or unavailability of defendant is not included in computing time within which information or indictment must be filed.) Further, while Illinois was holding the accused for trial on Illinois charges between February 7 (arrest) and March 11, 1969 (sentence), there was little Florida could do to bring Hill to trial.

Hill initiated actions seeking *to dismiss* the prosecution for want of prosecution and denial of a speedy trial as early as Novem-ber 6, 1969 by filing a motion to dismiss in the Florida trial court. After that motion was denied, petitioner twice sought writs of mandamus from the Florida Supreme Court directing the dismissal of the charges for want of prosecution because of the denial of a speedy trial.[2] When those efforts like-wise failed, the petitioner filed a certiorari petition in the United States Supreme Court (again requesting dismissal of the charges) that was eventually denied on April 19, 1971.[3] Following the denial of the certiorari petition, the state brought the petitioner to trial within seven weeks.

The appellate delay occasioned by peti-tioner's various legal initiatives should not

---

**2.** The petitions for mandamus to the Florida Supreme Court are contained in Exhibit B at p. 75 (March 27, 1970—denied July 31, with leave to re-file in sixty days) and at p. 81 (September 30, 1970). The prayers of both of these peti-tions (pp. 79, 87) seek the dismissal of the warrants for want of prosecution, in identical terms:

> Wherefore, Petitioner PRAYS that for the reasons enumerated herein and in the name of Justice, that this Honorable COURT GRANT it's Writ of Mandamus Directed against the Circuit Court of Hillsborough County, 13th Judicial District, Tampa, Flori-da. ORDERING said Court to FORTHWITH, have a Hearing in this Cause and on said Hearing to DISMISS the said Warrants is-sued against the Petitioner, for Want of Pros-ecution and a Denial of a Speedy Trial of the Issues.

**3.** A copy of Hill's petition for certiorari filed December 16, 1970 in the United States Su-preme Court was furnished to this court through both counsel after submission. Hill v. Circuit Court of Hillsborough, No. 6299 Octo-ber Term 1970. The petition reads in pertinent part:

> Petitioner has been Deprived of His Consti-tutional Right to a Speedy Trial by the State of Florida, by this Lapse of Almost TWO YEARS, since the said State, KNEW of His WHEREABOUTS and HIS AVAILABILITY TO STAND TRIAL. And is NOW entitled to have the Florida Warrants, Dismissed for Want of Prosecution and the Failure to Grant Him a Speedy Trial.
>
> WHEREFORE, Petitioner prays that this Honorable Court, will Grant the Writ of Cer-tiorari, and Reverse this Opinion Below, un-der the Holdings in, *SMITH v. HOOEY*, 393 U.S. 374, 89 S.Ct. 575, 21 L.Ed.2d 607 (1968) and *DICKEY v. FLORIDA*, 398 U.S. 30, 90 S.Ct. 1564, 26 L.Ed.2d 26 (1970).

be attributed to the state. Moreover, the state was not unreasonable in choosing not to try petitioner while these motions to dismiss were pending. This court has previously acknowledged that "[i]t would be extremely difficult to charge the state with failure to try an accused while the accused is himself seeking a writ to prohibit such a trial." *Torres v. Florida, supra,* 477 F.2d at 556. Additionally, the United States Supreme Court in a different context has recognized the value of not going to trial (potential avoidance of personal strain, public embarrassment and expense of a criminal trial) before resolution of certain pre-trial motions. *Abney v. United States,* 431 U.S. 651, 661, 97 S.Ct. 2034, 2041, 52 L.Ed.2d 651 (1977) (appellate review of double jeopardy claims).

#### C. *Assertion of the right*

As the context facts show, petitioner wrote several letters to various parties in his effort to assert a speedy trial claim. The first letter referring to speedy trial was written on August 12, 1969 to the Hillsborough County Constable, who subsequently . forwarded the letter to the State Attorney. However, as the context facts also show, the assertion thereafter was for dismissal of the charges rather than for a trial.

#### D. *Prejudice to the defendant* [4]

Hill argues that the trial delay resulted in faded memories that tainted his in-court identification. He also claims that half of the thirteen witnesses *subpoenaed by the state* were never located and others were unable to attend because of illness.

Hill specifically contends that the two prosecution witnesses who identified him at trial could not recall the details of descriptions they provided to the police immediately after the crime. At the trial of the robbery charge, two witnesses positively identified the petitioner as the armed robber. One of the witnesses, the store manager, was forced by the robber to open a safe. The other witness, a store customer, was able to view the robber during the course of the robbery from a range as close as ten feet. Although neither witness could remember the description of the robbery they gave to the police, both were extensively cross-examined concerning any discrepancy between their original description and their present ability to identify the petitioner at the robbery trial, and both adhered to their trial identification. The jury had a fair opportunity to evaluate the credibility of the witnesses' identification in the light of the passage of time.

Further, the unavailability of prosecution witnesses at the trial (none of which the defense had also subpoenaed) is not shown to have prejudiced the defendant. We note, for instance, that no attempt was made by Hill to produce any of them at the habeas hearing.

■ In summary, we are faced with what seems to be a serious three-year delay between arrest and trial. Much of this delay, however, is appropriately chargeable to the petitioner. And while the petitioner did assert his right to a speedy trial in several letters, on the other hand his actual trial and appellate tactics were designed to prevent trial. Further, Hill failed to demonstrate actual prejudice, despite his not unreasonable arguments to such effect. Balancing all of the relevant factors, we conclude that Hill obtained the speedy trial that the Constitution guarantees him.

#### 2. *Nondisclosure of Evidence Favorable to the Defense*

■ The petitioner argues that the state failed to disclose evidence favorable to the defense as required by *Brady v. Maryland,*

---

4. When the first three factors of the *Barker* balancing test are heavily weighed against the government, the defendant does not have to demonstrate prejudice. *United States v. Avalos,* 541 F.2d 1100, 1116 (5th Cir. 1976); *Prince v. Alabama,* 507 F.2d 693, 706–07 (5th Cir. 1975); *Hoskins v. Wainwright,* 485 F.2d 1186, 1192 (5th Cir. 1973) (on rehearing). This is not such a case, however, as the lion's share of the trial delay should be credited to the petitioner.

373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). The evidence allegedly suppressed by the state was a police report containing descriptions of the robber. We find that although the descriptions in question may have properly been subject to *Brady* disclosure, the failure to produce them does not require a retrial in this case. At the state habeas evidentiary hearing, Hill's attorney admitted having independently obtained the information contained in the police report. The trial cross-examination of the witnesses to the robbery demonstrates that the police report information was used by Hill's counsel at the trial on the robbery charges.

### 3. *Ineffective Assistance of Counsel*

The petitioner claims that his appointed trial counsel was ineffective in three respects: (1) he failed to raise the speedy trial issue prior to trial; (2) he failed to interview and depose essential witnesses prior to trial; and (3) he failed to participate in reciprocal discovery with the state, resulting in the exclusion of certain defense exhibits at trial.

■ The standard for resolving this issue is whether petitioner was represented by counsel "reasonably likely to render and rendering reasonably effective assistance." *Herring v. Estelle*, 491 F.2d 125, 127 (5th Cir. 1974), *quoting Mackenna v. Ellis*, 280 F.2d 592, 599 (5th Cir.), *cert. denied*, 368 U.S. 877, 82 S.Ct. 121, 7 L.Ed.2d 78 (1960). On this record we conclude, as did the district court, that petitioner's counsel was not constitutionally ineffective.

■ The record discloses that counsel, when appointed, raised the speedy trial issue by filing a motion to dismiss on March 17, 1971. Counsel's failure to depose the identification witnesses does not present a constitutional infirmity, since (as previously noted) counsel had independent knowledge of the descriptions furnished by the witnesses as set forth in the police reports. Trial counsel utilized this information well on cross-examination in an attempt to weaken the eyewitnesses' credibility because of alleged discrepancies between their initial descriptions of the robber and Hill's actual physical characteristics. Moreover, Hill does not assert that he was surprised by the testimony of the identification witnesses adduced at trial.

The record reflects that Hill's trial counsel did fail to produce certain items in reciprocal discovery, thereby causing two defense exhibits (a photograph of the man the defense claimed was the robber and an accident report relevant to petitioner's asserted alibi defense) to be excluded at trial. While the exhibits themselves were excluded, the transcript reveals that the facts surrounding them and the ostensible purpose for which the defense sought to introduce them were nevertheless developed before the jury.

Hill's counsel was not ineffective as a matter of law. Counsel's assistance met the previously delineated standard that counsel must be capable of rendering and actually render reasonably effective assistance.

### *Conclusion*

We conclude that none of the petitioner's claims have merit, and therefore AFFIRM the district court's denial of habeas corpus relief.

AFFIRMED.

### APPENDIX

| Date | Event |
|---|---|
| 6/21/68 | Robbery occurred |
| 6/26/68 | Warrant issued for Petitioner's arrest |
| 2/7/69 | U.S. Marshal arrested Petitioner on unrelated charge, in Illinois |
| 2/18/69 | State's Attorney in Illinois notified Hillsborough County Sheriff's Dept. that Petitioner was incarcerated there |
| 3/11/69 | Petitioner sentenced on Illinois charges (10–15 years) |
| 6/19/69 | Florida warrant transmitted to warden in Illinois |
| 8/12/69 | Petitioner wrote to Hillsborough County, Florida Constable, specifically referred to speedy trial; forwarded to State's Attorney's Office. |
| 9/18/69 | Petitioner wrote Florida Governor Claude Kirk, requested speedy trial; forwarded to Hillsborough County State's Attorney's Office |
| 9/29/69 | State's Attorney wrote Petitioner, advised him to contact Public Defender for speedy trial. |

11/6/69 Petitioner's motion to dismiss for want of prosecution filed

3/27/70 Petitioner filed petition for writ of mandamus in Florida Supreme Court

7/31/70 Petition for mandamus denied

9/23/70 Florida filed direct information charging Petitioner with robbery, and capias issued

9/30/70 Petitioner filed second petition for writ of mandamus in Florida Supreme Court

11/21/70 Petitioner wrote letter to State's Attorney Office in Hillsborough County Florida, requesting speedy trial

12/4/70 Extradition proceedings were begun

12/16/70 Petitioner filed petition for certiorari in U.S. Supreme Court

12/20/70 Petitioner waived extradition

1/31/71 Petitioner arrived in Florida

3/1/71 Capias executed

2/9/71 Arraignment on robbery charge, Public Defender appointed

2/24/71 Petitioner filed motion to dismiss the Information because statute of limitations had expired

3/1/71 Motion to dismiss granted with leave to refile

3/5/71 Amended information filed, charging Petitioner with robbery and stating that the case was part of the continuing prosecution begun on 6/26/68 when warrant issued

3/17/71 Petitioner filed motion to dismiss the charges on speedy trial grounds

3/17/71 Petitioner filed motion to continue or stay his trial pending decision by U.S. Supreme Court on his petition for certiorari

4/19/71 U.S. Supreme Court denied certiorari, without opinion

6/3/71 Trial commenced