**UNITED STATES of America, Appellee,**

v.

**Jeffrey R. MacDONALD, Appellant.**

**No. 79–5253.**

United States Court of Appeals,
Fourth Circuit.

Submitted Aug. 18, 1980.

Decided Dec. 18, 1980.

Bernard L. Segal, Stephen Siegel, Sara A. Simmons, San Francisco, Cal., Professor Ralph Spritzer, Philadelphia, Pa., Michael J. Malley, Washington, D. C., and Wade M. Smith, Raleigh, N. C., for appellant.

James L. Blackburn, First Asst. U. S. Atty., Raleigh, N. C., and Brian M. Murtagh, Atty., U. S. Dept. of Justice, Washington, D. C., for appellee.

**PER CURIAM:**

The petition for rehearing is denied, Judge Bryan dissenting. A majority of the judges of the Court who are in regular active service has not voted in favor of rehearing en banc, and the request therefor is accordingly denied.

Annexed hereto are:

(1) Dissenting statement of Chief Judge HAYNSWORTH.

(2) Dissent of Circuit Judge DONALD RUSSELL, Circuit Judge WIDENER, Circuit Judge K. K. HALL and Circuit Judge PHILLIPS.

(3) Statement of Circuit Judge MURNAGHAN.

HAYNSWORTH, Chief Judge, dissenting:

Ordinarily, I think it inappropriate for judges to write in support of losing votes for an *en banc* rehearing. The situation presented here, however, is not ordinary, for the question which five of the ten judges in regular active service sought to have the *en banc* court consider has never been addressed in any of the panel opinions. In this very extraordinary case, I think the parties and the public are entitled to know the question which five of the judges sought to have argued before, and determined by, the full court.

Of course, preindictment delay may be relevant to a Fifth Amendment claim of deprivation of due process. That is true whether or not there had been an earlier indictment or arrest which had been terminated by dismissal or release. The relevance of such an interval between two separate proceedings to a Sixth Amendment claim of denial of a speedy trial, however, has never been adjudicated by this court. I would prefer not to express what may appear to be a considered opinion of it without plenary consideration of it by the full court, but denial of the rehearing forecloses that possibility. My tentative agreement with the position of the United States in its petition for rehearing was sufficiently firm, however, to prompt me to request a poll of the court on the suggestion of rehearing *en banc* and to vote for it.

Under these circumstances, it seems to me appropriate for Judges Russell, Widener, Hall and Phillips to give expression to their views and for me to file this tentative addendum in agreement with them that the interval between Dr. MacDonald's release by the Army and his later indictment is irrelevant to a consideration of his Sixth Amendment claim.

1. We do not address any claim for relief by the defendant under the Fifth Amendment because *the panel opinion very clearly declares at the outset that it does "not reach ... the Fifth Amendment issue."* If an issue under the Fifth Amendment is to be considered, it can only be done by granting the Government's motion for rehearing.

DONALD RUSSELL, WIDENER, K. K. HALL, and PHILLIPS, Circuit Judges, dissenting:

We dissent from the denial of *en banc* rehearing in this case. We do so primarily because the denial results in a complete failure by this Court to address a point raised by the Government in its petition for rehearing, which we regard as completely dispositive against any claim by the defendant under the Sixth Amendment.[1] The point raised is that, in assessing the length of delay under a Sixth Amendment claim, it is not appropriate to take into account periods between successive indictments during which a defendant was under no accusation.

*Barker v. Wingo*, 407 U.S. 514, 530, 92 S.Ct. 2182, 2192, 33 L.Ed.2d 101 (1972), declares that the first question to be addressed in resolving every Sixth Amendment speedy trial claim, which is the claim on which the panel opinion reverses, is the determination of the "length of delay" in the prosecution. Unless such delay is sufficiently lengthy to be assessed as "presumptively prejudicial,"[2] the claim of constitutional violation must fail and it is unnecessary for the Court to consider any of the other factors listed in *Barker*. *Id.* at 530, 92 S.Ct. at 2192. It is thus clear that it is crucially important to identify both the beginning and the ending date for computing "length of delay" in the prosecution, as that term is used in *Barker*, and as further defined in *Dillingham v. United States*, 423 U.S. 64, 96 S.Ct. 303, 46 L.Ed.2d 205 (1975). The first opinion in this case[3] fixed both critical dates. The Court in that opinion found that the relevant period for computing "length of delay" was the period of "delay between the accusation and detention of MacDonald [under the military proceedings and his indictment in this proceed-

2. *Barker v. Wingo*, 407 U.S. at 530, 92 S.Ct. at 2192.

3. *United States v. MacDonald*, 531 F.2d 196 (4th Cir. 1976) [hereinafter referred to as "*MacDonald I*"].

ing, which] was more than four and one-half years." 531 F.2d at 205. It fixed the beginning date as May 1, 1970, when the Article 32 military proceedings were begun against MacDonald. These proceedings the court considered to be the equivalent of a civilian arrest.[4] It identified the termination of the critical period as the return of the indictment. It did this because the defendant conceded that there was no "substantial delay" after indictment. Since the defendant was himself responsible for any real delay after indictment, he could not have avoided making such concession.[5] The court in *MacDonald I* proceeded to find that this delay of four and one–half years was sufficient to justify, under the *Barker* "triggering" test, "inquiry into the other factors that go into . . . assessing MacDonald's claim that he has been denied a speedy trial." *Id.* at 205. The present panel opinion adopts this conclusion of *MacDonald I.*[6]

Our point of difference with the present panel opinion, as well as with *MacDonald I,* is the inclusion in the computation of "length of delay" the period between the dismissal of MacDonald's military arrest in

October, 1970 and January, 1975, when he was indicted. This was a period during which he was not under arrest, was not under indictment or any other form of legal accusation, civil or military. There was no charge pending against him, and thus there was neither a trial nor even a hearing which he could request or demand. In short, there was nothing to which a claim for a speedy trial could attach. From December, 1971 to January, 1975, he was practicing his profession without hindrance of any kind. If this period of time is eliminated from the period of delay found by the panel and by *MacDonald I,* the delay will be at most seven months, a period entirely too short to "trigger" further inquiry under *Barker.* See *United States v. McGrath,* 622 F.2d 36, 40–41 (2d Cir. 1980).

That this period between 1970 and 1975 when the defendant was free of any legal accusation of any kind is not to be counted in computing "length of time" is clearly established in the opinion of Judge McCree in *United States v. Martin,* 543 F.2d 577 (6th Cir. 1976), *cert. denied,* 429 U.S. 1050, 97 S.Ct. 762, 50 L.Ed.2d 766 (1977); in fact, it can be argued that the entire period of

---

4. The defendant MacDonald was charged in an affidavit, filed under Article 30 of the Uniform Code of Military Justice, 10 U.S.C. § 830, with the murder of his wife and children. On the basis of that charge, the defendant was "restricted to quarters" and "relieved of duty" and an Article 32, 10 U.S.C. § 832, hearing was set to determine whether probable cause existed for sending the matter up for a court martial. At the conclusion of the Article 32 hearing, it was recommended that the charges be dismissed and that recommendation was accepted and adopted by the commanding general, with the result that as of October 23, 1970, the military charges against the defendant were dismissed. Subsequently, in December, 1970, the defendant requested and received an honorable discharge from the Army. He then established himself in California, where, between 1971 and his indictment in 1975, he was actively engaged in the practice of medicine.

5. *Hill v. Wainwright,* 617 F.2d 375 (5th Cir. 1980) ("If the postponement is occasioned by the actions of the accused himself, the delay . . . may be excused." Id. at 378); *Keeny v. Swenson,* 458 F.2d 680, 682 (8th Cir.), *cert. denied* 409 U.S. 1027, 93 S.Ct. 468, 34 L.Ed.2d 321 (1972); *United States v. Cook,* 400 F.2d 877, 878 (4th Cir. 1968) (per curiam), *cert.*

*denied,* 393 U.S. 1100, 89 S.Ct. 898, 21 L.Ed.2d 792 (1969); *Morland v. United States,* 193 F.2d 297, 298 (10th Cir. 1952); *Iva Ikuko Toguri D'Aquino v. United States,* 192 F.2d 338 (9th Cir. 1951).

6. There is some confusion in the panel opinion on this point. Immediately after declaring that it adopts the conclusion and reasoning of the Court in *MacDonald I* on "length of delay," which under *MacDonald I* was calculated from the date of the military arrest to the date of the indictment, the present panel opinion states in the very next sentence that the "length of delay" in this case, under the *Barker* rule, was "the lapse of time between the military arrest and trial." By this statement, it would double the time period found in *MacDonald I* to be the proper computation of "length of delay" for purposes of resolving the "triggering" factor under *Barker.* In so doing, it overlooks entirely the reasons which prompted Judge Butzner in *MacDonald I* to terminate the calculation of delay with the return of the indictment, *i. e.,* that the defendant himself, by his various motions and appeals had been the author of any substantial delay that followed the indictment.

time between the filing of the first indictment and its dismissal was thought by the Court in that case to be outside the period to be considered in evaluating delay in connection with the second indictment. The opinion of Judge McCree in that case is directly on point. In *Martin*, the defendant was charged under an indictment returned in August, 1972. Those charges were dismissed in January, 1973.[7] A second indictment was filed in December, 1974 and the defendant was tried and convicted in December, 1975. He contended both at trial and on appeal that the delay from his first indictment to his trial in December, 1975 violated his speedy trial rights under the Sixth Amendment. In dismissing the contention and in holding that the period between the dismissal of the first indictment and the return of the second, if not the entire period between the first and second indictments, was to be disregarded in calculating "length of delay" under *Barker*, Judge McCree said:

> The Sixth Amendment right to a speedy trial does not attach until the formal charge, *the trial of which is alleged to have been inordinately and prejudicially delayed, is made. United States v. Marion*, 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971). Because there was no indictment which could have been tried in the period between January 1973 and December 1974, we cannot say that a speedy trial was delayed during that time. The remaining time is not remotely comparable to the five year delay which provoked the analysis in *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). Even if we were to

include the five months between the filing and dismissal of the earlier charges in this case, the total period of delay would still be less than the time between Barker's first objection to delay and Barker's trial. Even that period was insufficient to show a violation of Barker's Sixth Amendment rights. *Id.* at 579. (Emphasis added.)

Moreover, Congress, in enacting the Speedy Trial Act of 1974, 18 U.S.C. § 3161 *et seq.*, has in essence given legislative imprimatur to the rule announced by Judge McCree in *Martin*, at least its exclusion of the period of time between the dismissal of an earlier indictment and the return of a second indictment. Thus, that Act provides that the period between the dismissal of an earlier indictment and the return of a second indictment for the same offense "shall be excluded * * * in computing the time within which the trial of any such offense must commence" under the Act. 18 U.S.C. § 3161(h). And this is true whether the Government or the defendant has sought dismissal of the earlier indictment. The only distinction which the Court makes between the situation where the Government makes the motion and where the defendant makes the motion, is that the time between the return of the first indictment and its dismissal is included in computing the delay if the dismissal is at the instance of the Government but not if the dismissal is on the motion of the defendant. *But, in both situations, we repeat, the period between dismissal of the first indictment and the return of the second is not counted. See United States v. Dennis*, 625 F.2d 782, 793 (8th Cir. 1980).[8]

---

7. There is a difference between this case and *Martin*. In this case, the first proceeding never got to the indictment stage. It was dismissed at the preliminary hearing stage, if we analogize the military procedure to civilian criminal procedure. In the *Martin* case, the dismissal was after indictment. But as a practical matter, the earlier proceedings in both cases were effectively terminated by a dismissal, in the one case of the military charges and in the other of the indictment, and so the legal consequences of the two dismissals are the same.

8. *See* the Annotator's Note in 18 U.S.C.S. § 3161, at p. 371:

> Policy and Purpose of Speedy Trial Act of 1974, 18 U.S.C.S. § 3161 *et seq.*, and of all speedy trial plans have been to expedite processing of *pending* criminal proceedings, not to supervise exercise by prosecutor of his investigative or prosecutorial discretion at time when no criminal proceeding is pending before court; to invade judicial branches in matters that fall primarily, if not exclusively, within jurisdiction of executive branch; by same token, neither Act nor Plans were intended to impose time limits in addition to

Despite the clarity of Judge McCree's opinion in *Martin* and, in effect, the adoption of this view by the Congress itself in its legislatively mandated Speedy Trial Act, the panel opinion has included in its calculation of "length of delay" the period between 1970 and 1975, after the dismissal of the military Article 32 proceedings when the defendant was not "accused."[9] In *MacDonald I*, the court sought to justify such inclusion by this reasoning:

> MacDonald's freedom from detention on bail during the interval between the termination of the Article 32 proceeding and his arrest after indictment did not, from a practical standpoint, dispel the effects of the government's initial accusation. MacDonald, of course, realized that the favorable conclusion of the Article 32 proceedings was not the end of the government's efforts to convict him. Prudence obliged him to retain attorneys at his own expense for his continuing defense. He remained under suspension and was subject to the anxiety of the threat of another prosecution.[10]

those provided for by Constitution with respect to government investigations undertaken while defendant is not subject of formal proceedings; taken together, 18 U.S.C.S §§ 3161(d) and (h)(6) make it clear that Congress' purpose was to disregard period after dismissal of complaint and prior to filing of indictment for same offense; although § 3161(h)(6), read literally, suspends running of Act's time limits upon Government's dismissal of indictment, as distinguished from complaint, it follows that upon voluntary dismissal of complaint period thereafter up to filing of indictment should not be included, if not disregarded entirely pursuant to § 3161(d). *United States v. Hillegas* (2 Cir. 1978) 578 F.2d 453.

This conclusion follows the authoritative language of S.Rep.No. 93–1021, at 33, Report in the Senate Judiciary Committee on the Speedy Trial Act, July 18, 1974:

> "Thus, when subsequent complaints are brought, the time limits will begin to run from the date of the filing of the subsequent complaint."

**9.** It would seem that, since the dismissal of the military proceedings must be taken as at the defendant's motion, the entire time prior to the second indictment should be eliminated from the computation of "length of delay." It does not matter here, though, whether or not we include this period between arrest and dismissal of the military proceedings. Whether includ-

531 F.2d at 204. In the present panel opinion, the court finds the same factors to constitute "personal prejudice to the accused [sic]."

The circumstances advanced by the two opinions for refusing to exclude the period when no criminal proceedings of any kind were pending before the court and the defendant was not subject to any legal restraint or accusation will not support a Sixth Amendment speedy trial claim, for the simple reason that there was no charge against the defendant to be tried during this time. What the two opinions overlook is that the defendant has a remedy if any delay prior to indictment created sufficient prejudice that it can be fairly said that the defendant's right to a fair trial has been impaired. But—we repeat—this remedy is not found under the Sixth Amendment speedy trial clause but under the Fifth Amendment due process clause. This fact was made abundantly clear in *Arnold v. McCarthy*, 566 F.2d 1377, at 1383 (9th Cir. 1978). There, the court said:

ed or not, the "length of time" here, just as in *Martin*, would not be enough to meet the "triggering" test under *Barker*.

**10.** Neither ground stated by the court would justify even a due process claim under the Fifth Amendment. The courts have uniformly dismissed general statements of anxiety as insufficient to support any claim of prejudice. As the court said in *United States v. Shepherd*, 511 F.2d 119, 123 (5th Cir. 1975), ". . . anxiety is present to some degree in every case. Something more than the ordinary anxiety that accompanies a trial is necessary to show a degree of prejudice." See also, *United States v. Avalos*, 541 F.2d 1100, 1115 (5th Cir. 1976).

The defendant may have continued the representation he had in the military proceedings after the case was referred to the Department of Justice. But such expense as this entailed was directed at inducing the Department not to prosecute. This is hardly a ground in speedy trial cases. In every extended criminal investigation, the one who considers himself as the object of the investigation generally has employed counsel. We doubt that the courts are prepared to consider this expense as prejudice, certainly not prejudice sufficient to justify freeing one whose guilt was later established by the unanimous verdict of a jury after an error-free trial.

When the mistrial was declared on November 4, 1969, after the jury failed to reach a verdict in Arnold's first trial for robbery-assault, the prosecution moved to dismiss the charges. The dismissal was granted without prejudice. After the dismissal Arnold was no longer "accused"; he no longer had any right to demand a speedy trial under the Sixth Amendment. Any contention that he was prejudiced by delay between this dismissal and his second trial must be tested under the general requirements of due process.[11]

We suggest with the utmost deference, for what we recognize is the sincere conviction of our colleagues who feel that a rehearing is not required, that as the opinions now stand, it cannot be said that, in setting aside this murder conviction on speedy trial grounds, we have fully covered and clearly resolved the critical threshold issue of "length of delay". This, after all, is an important case with wide public interest. Any opinion in the case should, we respectfully suggest, thoroughly canvas all the points raised, whether in the original hearing or by the petition for rehearing, and, by our opinion on those points, assure the defendant, the government and the public that we have not passed over in silence but have frankly and fully considered those points and reached a just result. This will be one of those rare cases in which a plea of a violation of the speedy trial right under the Sixth Amendment has been upheld. It thus behooves us not to dismiss in silence a serious point, sustained as it is by respectable authority and, by analogy at least, by

Congressional action, and to set at naught the verdict of a jury which unanimously found the defendant guilty after an error-free trial. Rehearing and decision on the important point raised by the Government on whether the period between dismissal of the military "arrest" for want of probable cause and the actual indictment should be included in the computation of "length of delay" is, in our opinion, demanded in this case. We dissent from the failure to face the issue directly.

If our opinion is correct that the "length of delay" in this case was insufficient to "trigger" further inquiry into the claim of a violation of the speedy trial provision of the Constitution, it is unnecessary, as we have said, to consider the other factors set forth for consideration in *Barker.* We would remark briefly on these factors, however, on the assumption that, contrary to what we conceive the law to be, the Court could, under a Sixth Amendment speedy trial claim, consider delay between the dismissal of the military proceedings and the return of the indictment. We shall accordingly discuss briefly the three factors listed in *Barker* other than the threshold one of length of delay.

The prevailing panel opinion fixes the delay attributable to the Government (the second factor to be considered under *Barker*) as that between the receipt of the CID report by the Department of Justice in 1972 and the date of the return of the indictment, or a period of two and one-half years prior to indictment. The CID report submitted to the Department consisted of thirteen volumes and innumerable documents.

---

11. See also *United States v. Beckham*, 505 F.2d 1316, 1319 (5th Cir. 1975), and *United States v. Davis*, 487 F.2d 112 (5th Cir. 1973), *cert. denied*, 415 U.S. 981, 94 S.Ct. 1573, 39 L.Ed.2d 878 (1974).

The Senate Committee Report, *supra*, p. 7, n.5, suggests this same remedy if there is improper delay between indictments. Thus, after stating that the time limits are inapplicable to the period between a dismissed initial indictment and a second indictment, it states (p. 33):

The Committee is concerned that this provision not be used to evade the speedy trial time limits set out in this Act. The prosecutor should not be able to avoid the speedy

trial time limitations when his carelessness in preparing the original complaint or indictment has resulted in a dismissal under this section. Therefore, when a judge dismisses an original information or indictment on other than speedy trial grounds he should, nevertheless, take into consideration the defendant's right to speedy trial under the statute and under the Constitution. For example, the judge might want to order that the original dismissal be with prejudice so that the prosecutor could not reindict several months after a carelessly drawn indictment has been dismissed.

It was not a complete report and was so recognized by the CID for it suggested that the Department conduct additional investigations. Such a recommendation was understandable. The crime involved was both horrible and bizarre. The only eye witness was the defendant himself. Any prosecution was dependent upon the development of a convincing web of circumstantial evidence. This was a herculean task. And it was a task that the Government undertook seriously. It felt an obligation both to itself and to the defendant to proceed with great care lest it err either in absolving a likely guilty party or in unfairly charging a seeming innocent party. In this effort to be thorough, it had the CID twice reopen its investigation in order to pursue additional evidence. The bodies of the deceaseds, the wife and children of the defendant, were exhumed in order that a hair test could be performed. The result of these tests was a critical point in the case. It is thus clear that this was not a simple case but one of infinite factual ramifications. Perhaps the Department could have moved with greater speed in investigating these facts. Unquestionably, there was some delay because of, what one court has characterized, as "institutional dysfunction." [12] But the delay from this cause was not substantial and it certainly was not prompted by any tactical or vindictive purpose, or anything other than a "benign" purpose. As such it is not given much weight in this context.[13]

The prevailing opinion suggests that the delay by the Department may have been "a disagreement between two groups in the Justice Department as to whether the case should be prosecuted" or "just simple government bureaucracy." For this latter statement the opinion seems to rely on a statement of an assistant district attorney that from the receipt of the CID report he thought the Government had enough evidence to prosecute. We give little or no weight to this fact. So far from being a criticism of the Department, this hesitancy on its part to proceed on the recommendation of the assistant district attorney without the most careful consideration of every contrary argument and circumstance is to be commended, not condemned. Often a zealous investigator or prosecutor wishes to rush in with a prosecution when others, less intense in their feelings and more balanced in their judgment, would wish further investigation and inquiry. We do not think we should establish any rule that when any zealous "eager beaver" investigator or assistant district attorney recommends prosecution, any delay by the Department of Justice in authorizing prosecution should be ascribed to bureaucratic bungling; nor should we want to criticize the Department for any delay when its delay was due to a desire to consider fairly the arguments of those opposed to prosecution. And this we take to be the opinion of the Supreme Court, as it was forcefully expressed in *United States v. Lovasco*, 431 U.S. 783, 790–91, 795, 97 S.Ct. 2044, 2048–2049, 2051, 52 L.Ed.2d 752 (1977).[14] In short, we feel that, considering the complexity of this case and the difficulty of reviewing the many

---

12. *United States v. McGrath*, 622 F.2d 36, 41 (2d Cir. 1980).

13. *Barker v. Wingo*, 407 U.S. at 530, 92 S.Ct. at 2192.

14. In this case the Court said at pp. 790–91 and 795, 97 S.Ct. at pp. 2049 and 2051:

It requires no extended argument to establish that prosecutors do not deviate from 'fundamental conceptions of justice' when they defer seeking indictments until they have probable cause to believe an accused is guilty; indeed, it is unprofessional conduct for a prosecutor to recommend an indictment on less than probable cause. It should be equally obvious that prosecutors are under no duty to file charges as soon as probable cause exists but before they are satisfied they will be able to establish the suspect's guilt beyond a reasonable doubt. To impose such a duty 'would have a deleterious effect both upon the rights of the accused and upon the ability of society to protect itself'. . . .

. . . . Rather than deviating from elementary standards of 'fair play and decency,' a prosecutor abides by them if he refuses to seek indictments until he is completely satisfied that he should prosecute and will be able promptly to establish guilt beyond a reasonable doubt. Penalizing prosecutors who defer action for these reasons would subordinate the goal of 'orderly expedition' to that of 'mere speed'.

strands of circumstantial evidence involved, the Government was not guilty of excessive delay in beginning the prosecution.

Turning to the third *Barker* factor, it may be conceded that in this two and one-half year period during which the Department was proceeding with its investigation, the defendant was pressing the Department. Primarily, he sought to induce the Department to abandon the investigation, but he did ask that, if it were going to prosecute, to prosecute then. But it has been held that a putative defendant has no right to demand that he be arrested or that an investigation be abandoned.[15] The reason for this rule is that to uphold such a right would be to interfere improperly with the executive's discretion to investigate and to prosecute. See Judge Mansfield's opinion in *United States v. Hillegas*, 578 F.2d 453, 456–7 (2d Cir. 1978). Any contrary rule would enable any person under investigation to frustrate that investigation of his possible criminal conduct by demanding prosecution as soon as he hears that his conduct is under scrutiny. It is easy to see how such a rule would thwart the effective prosecution of many complex cases, for example, tax fraud cases, to mention but one instance of the rule's impropriety. Moreover, this contention is appropriately directed only to a claim of a violation under the Fifth Amendment (due process) as distinguished from a speedy trial claim under the Sixth Amendment.

Finally, we turn to "prejudice," which is declared to be the most significant "factor" in the *Barker* litany.[16] *Barker* identified the three circumstances which could represent prejudice to the defendant in this context: they are (a) oppressive pretrial incarceration; (b) anxiety of the defendant; and (c) impaired defense. The first two can be quickly disposed of. The defendant suffered no oppressive incarceration, and "anxiety" is present in every prosecution. For that reason, "anxiety" standing alone, will not ordinarily support a claim of prejudice in an accused's defense, since, "[s]omething more than the normal anxiety that accompanies a trial is necessary to show a degree of prejudice." *United States v. Shepherd*, *supra*, p. 8; *United States v. Hill*, 622 F.2d 900, 910 (5th Cir. 1980); *United States v. Vanella*, 619 F.2d 384, 386 (5th Cir. 1980). That leaves as the only basis for prejudice in this case a showing of impaired defense. And this does not mean vague claims of prejudice or an assertion of speculative prejudice; it means a showing of actual prejudice to the defendant's defense. This was spelled out by the Court in *Hill v. Wainwright*, 617 F.2d 375, 379 (5th Cir. 1980), in which a claim of a speedy trial violation was dismissed because the defendant had "failed to demonstrate *actual* prejudice." (Emphasis added) Judge Bryan's dissenting opinion in *MacDonald II* demonstrates convincingly why there was no actual prejudice of the defense by the delay prior to indictment. There were many witnesses at the trial. The defendant points only to one witness whose failure to recall, he claims, was prejudicial to his defense. This witness was in such a mental condition that she could not supply any information pertinent to the trial. This was not, however, a condition which developed as a result of any delay in either the investigation or the prosecution of the defendant. From

**15.** *United States v. Lovasco*, 431 U.S. at 790–96, 97 S.Ct. at 2048–2051. See also, *Hoffa v. United States*, 385 U.S. 293, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966). ("There is no constitutional right to be arrested ... Law enforcement officers are under no constitutional duty to call a halt to a criminal investigation the moment they have the minimum evidence ..." which may be enough perhaps to establish probable cause, but not sufficient to prove someone guilty beyond a reasonable doubt.)

**16.** In fact, the Supreme Court, in reversing *MacDonald I* indicated quite clearly, if we read

correctly its opinion, that the question of prejudice was one to be analyzed and ruled on by the district judge, who had the benefit of the full record as well as the best opportunity to evaluate the credibility and weight to be accorded the evidence, and that his judgment was only to be reversed for clear error. The district judge in this case did so rule but the prevailing opinion of our court gives no weight to this ruling of the district judge. We believe that, in so dismissing without comment the district judge's action, the prevailing opinion has not followed the suggestion of the Supreme Court.

the first interview of this witness shortly after the murders on through all the investigations and post-indictment maneuverings up to actual trial, her mental condition was the same; she could recall nothing relevant to the case. Without any real prejudice, the defendant had neither a Fifth Amendment due process violation nor a Sixth Amendment speedy trial violation.

It is possible that some members of the Court may have been influenced against the request for *en banc* rehearing, as filed by the Government, because the primary point on which rehearing was requested was one which the Government had not earlier identified specifically on the first appeal in this case and was not pressed particularly on initial argument on this appeal. The failure of the Government to have expressly brought out the point on the first appeal may make our failure earlier to consider it understandable (one of those concurring in this dissent pleads such excuse) but when, by the petition for rehearing on this appeal, the point is clearly raised, with supporting authority, and the point, if sustained as the Government contends it should be, is dispositive of the critical threshold issue of length of delay under the speedy trial plea, we do not believe the failure of this court even to consider or decide the point is understandable. Whether cited to us early or late, we should not decide cases by dismissing out of hand relevant decisions dispositive of a critical issue in the case. And, if this point pressed by the petition for rehearing by the Government, is tenable, as we feel it is, it requires a reconsideration of all the factors which *Barker* says should be considered in this context. What we strongly object to is the failure even to consider, much less to come to grips with, what we conceive to be a dispositive issue in this case.

In summary, we are convinced that, properly computed, there was not such "length of delay" in this prosecution as to "trigger" inquiry on speedy trial constitutional grounds under *Barker v. Wingo.* This fact is made clear in the Government's petition for rehearing. Since the panel opinion is to the contrary, *en banc* rehearing is necessary to correct that error in the panel's opinion.

Though the above point as raised in the petition for rehearing is, in our opinion, dispositive of this case, we are equally convinced that the defendant in this case has not satisfied the requirements of the other factors listed in *Barker* for the granting of a dismissal on speedy trial grounds under the Sixth Amendment.

We accordingly dissent from the denial of rehearing *en banc* by an equally divided vote in this case.

MURNAGHAN, Circuit Judge:

It had been my intention to abide by the customary disposition, a simple indication that the request for rehearing *en banc* had failed for want of a majority vote. In view of the dissent filed by Judges Russell, Widener, Hall and Phillips, however, two additional points should be made.

First, I apologize to my colleagues for the error in language in the panel opinion to which the dissent, in footnote 6, calls attention. I erred when I stated that "[t]he offending delay imposed by the government was not the time between the indictment and trial, but the lapse of time between the military arrest and trial." Properly, I should have stated: "[t]he offending delay imposed by the government was not the time between the indictment and trial, but the lapse of time between the conclusion of the military proceedings in October 1970, and the indictment in January, 1975."

Elsewhere the panel opinion confirms that the panel majority did not include time beyond January 1975 for purposes of considering the speedy trial issues.

Second, the reiterated reference in the dissent to the trial in the case as "error-free" is premature and may not be correct. The panel majority was at pains to point out that it did "not reach the district judge's conduct and rulings at trial...." Whether the trial was "error-free" is simply a matter not yet addressed.

Finally, since I have felt compelled to write something, I should not pass, in complete silence, the dissent's principal plaint:

its contention that time between dismissal of an indictment (or its equivalent) and the processing of a subsequent indictment should not count for purposes of determining whether a speedy trial has been denied. Few, if any, absolutes exist in our judicial system. Each case presents its peculiar difficulties. While in at least one case, *United States v. Martin*, 543 F.2d 577 (6th Cir. 1976), *cert. denied*, 429 U.S. 1050, 97 S.Ct. 762, 50 L.Ed.2d 766 (1977), the Court said that the interval should not count, it did not say that it would never count. Here the situation was such that, from October 1970 (when the military proceedings concluded with a dismissal) until indictment in 1975, MacDonald's possible involvement was not dormant. The immense publicity and the continued inquietude because the matter was not put to rest engaged the tenets of the Sixth Amendment.

For authority applicable to this particular case, the decision in *United States v. Mac-Donald*, 531 F.2d 196 (4th Cir. 1976), is more compelling than a decision on different facts in another circuit. *See* especially 531 F.2d at 202: "Noting this, the Court carefully avoided adopting a simplistic rule that pre-indictment delay is always immaterial."