**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Roland BOSTIC et al., Defendants-
Appellants.**

**Nos. 72-1238, 72-1239.**

United States Court of Appeals,
Sixth Circuit.

Argued Dec. 6, 1972.

Decided July 19, 1973.

B. Bruce Guthrie, Chattanooga, Tenn., for Roland Bostic and Frank Meadows; Paul W. Sorrick, Jr., Chattanooga, Tenn., on brief.

Lloyd F. Arrowood, Johnson City, Tenn. (Court-appointed), for Walter Dean Bartlett.

W. Lloyd Stanley, Jr., Asst. U. S. Atty., Chattanooga, Tenn., for plaintiff-appellee; John L. Bowers, Jr., U. S. Atty., E. D. Tenn., Chattanooga, Tenn., on brief.

Before KENT,[*] Circuit Judge, and O'SULLIVAN and McALLISTER, Senior Circuit Judges.

McALLISTER, Senior Circuit Judge.

On March 31, 1971, a four-count indictment was filed in the District Court for the Eastern District of Tennessee, Southern Division, charging in Count One, that defendants Rollin August Varesi, Roland Bostic, Frank Meadows, Jack Bartlett and Walter Dean Bartlett conspired to violate certain laws of the United States relating to counterfeit currency, in violation of Title 18, United States Code, Section 371. Also named as co-conspirator, but not indicted, was Mrs. Gloria Patricia Varesi. The three remaining counts charged Meadows, Bostic, and Varesi with substantive offenses relating to counterfeit currency under Sections 472 and 473 of Title 18, United States Code.

Varesi entered a plea of guilty to Counts One and Three (the only counts wherein he was named) and he subsequently testified for the Government as an accomplice. After the trial he was released. Mrs. Varesi was not arrested,

but was taken to the police station and questioned, after which she was released.

The trial was held on September 13, 14 and 15, 1971, before a jury in the District Court. Defendant Walter Dean Bartlett was found guilty of the conspiracy count alone. Defendant Meadows was convicted on the conspiracy count, and also of possessing counterfeit money under Count Two. Defendant Bostic was convicted of conspiracy and also of possessing and selling counterfeit money under Counts Two and Four. Defendant Varesi pleaded guilty to the counts against him and, with his wife, subsequently assisted the Secret Service agents and the Government in the case against the others.

We are of the opinion that there was not sufficient evidence to convict Walter Dean Bartlett of conspiracy; that his conviction must be reversed, and that he should be discharged.

We are also of the opinion that the evidence was insufficient to convict defendant Frank Meadows of conspiracy and of possession of counterfeit money; that his conviction must be reversed and that he, too, must be discharged.

With regard to defendant Bostic, we are of the view that there was sufficient evidence to sustain his conviction and the judgment rendered thereon should be affirmed.

The parties will, hereafter, be referred to, as on trial, as defendants and plaintiff.

The background of this case is as follows: On December 13, 1970, the defendants Bostic and Meadows were driving to Chattanooga along Highway 58 to get some tile for one of the taverns Bostic operated. About noon, on the outskirts of Chattanooga, they saw defendant Roland and Varesi and his wife walking along the highway, and they stopped and offered them a ride. The Varesis were friends of Bostic and had known him for about twenty years. When they stopped

---

[*] Judge Kent participated in the argument of this case but died on May 28, 1973, before judgment was entered.

the car, they learned that the Varesis were on their way to purchase a money order to send to their children. After they continued their drive to Chattanooga, Bostic, Meadows and Roland Varesi stopped at a little place and had a couple of beers, while Bostic loaned the car to Mrs. Varesi to drive to a drugstore to get the money order. When she returned with the car, Varesi bought a 6-pack of beer, and they all went back to Varesis' house. Mrs. Varesi again borrowed the car to go for some articles of food. While the four of them were together, according to the testimony of Varesi, he testified that he had some conversation with Bostic and Meadows about counterfeit money. Varesi said he could not remember how the subject came up—"they asked me if I wanted some, something to that effect; I said I did, and I bought a hundred dollars' worth of it. * * * I got them from Roland (Bostic); he was the one handed them to me; I don't know whether they belonged to him or belonged to Frank (Meadows)."

Mrs. Varesi said "[I] don't quite remember who said anything about its being counterfeit."

"Q. Did your husband say anything about that?

A. Yes, he did, he said he wanted to buy some of the counterfeit money. * * * My husband and Roland Bostic and Frank Meadows they were discussing counterfeit money. * * * Roland and Frank told my husband they had passed a lot of that money."

■ When Varesi was again asked from which man he bought the counterfeit money, he testified:

"Well, I got them from Roland (Bostic); he was the one handed them to me; I don't know whether they belonged to him or belonged to Frank (Meadows)."

This is no evidence that Meadows sold any counterfeit to Varesi. The only other testimony from the Varesis or any others, that Frank Meadows had any "notes," was that of Varesi that:

"I seen some Frank had at his house, he didn't have but two or three at his house."

No one asked to buy any such notes from Meadows; and it was not even claimed that these two or three notes in Meadows' possession were counterfeit.

As will be recounted hereafter, when Frank Meadows was arrested by a Secret Service agent in his bed in the morning while suffering from an admittedly painful back ailment, the agent searched him, and afterward searched his entire premises without a search warrant, and found nothing but legal currency notes. Except for some vaporing remarks of Meadows that he had sold counterfeit money to others—not naming them or even giving any approximate dates of any actual sales, there was no evidence to prove a *conspiracy* on the part of Frank Meadows with the five others to commit a counterfeiting offense against the United States, or to prove a substantive crime of selling, possessing or uttering counterfeit money. The evidence to convict Meadows was insufficient; and the judgment against him should be reversed, and he should be discharged.

■ The evidence against Bostic was the testimony of Varesi that Bostic had sold counterfeit money to him, and the evidence of Secret Service Agent Davis that Bostic had also sold counterfeit money to him. This was evidence sufficient to sustain the conviction of Bostic.

It is with the third defendant in this case, Walter Dean Bartlett, that the Court is next concerned.

Walter Dean Bartlett was found guilty of a single conspiracy charged against him in that he, with Rollin Vare-

si, Roland Bostic, Frank Meadows and Jack Bartlett, did conspire, combine, confederate and agree among themselves to commit an offense against the United States of America—that is, to keep in their possession, and to utter, publish, sell, pass, and attempt to utter, publish, sell and pass with intent to defraud, certain counterfeit obligations of the United States, in violation of Title 18 U.S.C., Sections 472 and 473.

It has been said that there is probably no crime an exact definition of which it is more difficult to give than the offense of conspiracy. Pinkerton v. United States, 145 F.2d 252, 254 (C.A.5).

■ A general outline of the elements of a criminal conspiracy has been well stated in 15A, C.J.S. Conspiracy § 1 et seq. to be: (1) An object to be accomplished. (2) A plan or scheme embodying means to accomplish that object. (3) An agreement or understanding between two or more of the defendants whereby they become definitely committed to cooperate for the accomplishment of the object by the means embodied in the agreement, or by any effectual means.

A conspiracy has been characterized, rather than defined, as a partnership in criminal purposes, as a partnership in crime, and as a criminal partnership.

The unlawful combination being the gist of the conspiracy, it follows that there must be an agreement of some kind willingly entered into by the parties to it. There must be unity of design or purpose, a concert of will and endeavor, comprising what has been agreed to.

Mere knowledge or approval, without participation, does not make one a party to a conspiracy. Mere association does not establish a conspiracy, but there must be intentional participation in the transaction with a view to the furtherance of the common design and purpose. If, in Judge Learned Hand's well-known phrase, a man is to be held for joining others in a conspiracy, "he must in some sense promote their venture himself, make it his own, have a stake in its outcome. The distinction is especially important today when so many prosecutors seek to sweep within the drag-net of conspiracy all those who have been associated in any degree whatever with the main offenders. That there are opportunities of great oppression in such a doctrine is very plain, and it is only by circumscribing the scope of such all comprehensive indictments that they can be avoided." United States v. Falcone, 109 F.2d 579, 581.

■ A connection must be based on proof of the conspiracy alleged. Where one conspiracy is specifically charged, proof of different and disconnected ones will not sustain a conviction. To allege against a number of persons generally that they have conspired to cheat and defraud does not enable the prosecution to prove several conspiracies each affecting different contracts and different persons or groups of persons interested in the contracts, unless all the contracts and the wrong purposes in respect of them form parts of the same combination.

There must be at least two participants in a conspiracy. One man cannot conspire with himself.

■ The one-count conspiracy alleged against Walter Dean Bartlett was a single conspiracy. In this count, he was charged with conspiring with Rollin Varesi, Frank Meadows, Roland Bostic, and Jack Bartlett to keep in their possession and sell, and utter counterfeit money with intent to defraud the United States. Walter Dean Bartlett had never seen Varesi or Meadows. The evidence, or claim of evidence, of the Government against Walter Dean Bartlett was that Bostic had stated he had purchased counterfeit money from Walter sometime in December *1970;* that afterward two Secret Service agents went to see Bartlett at his house in Birmingham, pretending they wanted to purchase counterfeit money; that after a long day's work Walter met the agents on his front porch. Wal-

ter told the two agents that he didn't fool with counterfeit, but that "everybody in Birmingham knew it was floating all over town." When he was asked why he did not inform the authorities that two men were trying to buy counterfeit, Walter's response was: "I didn't think there was much to it, just thought a couple of goofballs came by there to see if I knew anything about it." The agents kept after him, by telephone calls—and after ignoring them for a considerable while, he called them back and told them he had not seen Mac around any of the bars. Subsequently, Walter was arrested and charged in the one-count indictment for conspiracy. Superannuated cases relating to the late unlamented Volstead Act, are inapplicable.

There is no evidence that Walter Dean Bartlett ever entered a single counterfeiting conspiracy with Rollin Varesi, Frank Meadows, Roland Bostic, and Jack Bartlett to keep in their possession and sell and utter counterfeit money with intent to defraud the United States. The utmost that could be claimed for the Government with regard to Walter Dean Bartlett is that, by hearsay evidence, Walter sold counterfeit bills to Bostic. If it be assumed that he did sell such counterfeit bills to Bostic, the law is plain that he was not guilty of the conspiracy claimed.

The leading case on the subject is United States v. Peoni, 100 F.2d 401, 403 (C.A.2), in which Judge Learned Hand, speaking for the Court, held that a defendant who sold counterfeit bills to a second party, who sold the same bills to a third person, who was arrested while trying to pass them, all three parties having knowledge that bills were counterfeit, was not a party to a conspiracy by which third persons should possess the bills, where defendant had no concern with bills after second party paid for them.

The Government failed to establish that Walter Dean Bartlett was a conspirator. This was the only count on which he was charged in the indictment. His conviction is reversed, and he is ordered discharged.