869 F.2d 1494
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Bill Wayne JAMESON, Defendant-Appellant.
 No. 87-6275.
 United States Court of Appeals, Sixth Circuit.
 March 14, 1989.
 
 Before KRUPANSKY and WELLFORD, Circuit Judges, and CHARLES W. JOINER*, Senior District Judge.
 WELLFORD, Circuit Judge.
 
 
 1
 The defendant Bill Wayne Jameson and his son were charged with conspiring to manufacture methamphetamine, a Schedule II controlled substance, and with aiding and abetting each other in such manufacture. The defendant's primary objections relate to the admission of evidence of a prior conviction and the absence of a certain witness at trial. Jameson claims also that he received ineffective assistance of counsel. (Different counsel represents him on appeal.) Because the conviction appears to us to be based on sufficient evidence and we are not persuaded that the trial court committed reversible error, we affirm.
 
 
 2
 On July 8, 1986, Robert J. Kirksey, an associate of the defendant, signed a six-month lease in the presence of the defendant for the rental of a one-story commercial building owned by Donald Schultz in Sevier County, Tennessee. Kirksey signed the lease as president of Intermont Products, Inc., the purported user of the premises, and the defendant represented himself to be that company's public relations man. Defendant Jameson, during his trial testimony, denied being present at the signing of the lease.
 
 
 3
 Schultz, the property owner, testified at trial that after the signing of the lease, the two large windows on the front of the building were painted in such a way that no one could see in, and that the defendant told Schultz on one occasion that he and Kirksey were chemists and were using the building to make commercial products, including car polish ingredients and a drain cleaner. Defendant testified at trial that Kirksey was a garage mechanic and denied telling Schultz that Kirksey was a chemist. During the term of the lease, very little activity was observed at the building during the day, but on occasions persons were seen entering and leaving the building during early morning hours while it was still dark.
 
 
 4
 Agents of the Tennessee Bureau of Investigation (TBI) and the Drug Enforcement Administration (DEA) began surveillance on the building during January of 1987, several months after the Schultz property was leased. Law enforcement officers observed the defendant's son, Robin Jameson, carrying four garbage bags out of the building. These bags were later retrieved from a garbage dump and were found to contain boxes marked thionyl chloride and lithium metal, a box bearing the defendant's name, and a box bearing the name and address of Durr-Fillauer Medical, Inc., a Chattanooga, Tennessee company that supplies laboratory chemicals.
 
 
 5
 A search warrant was executed on the building in question on January 23, 1987, and as a consequence, government agents found numerous laboratory materials including bottles, small jars, a suction flask, filter paper with white powder, ephedrine, and a large hydrogen tank. The agents also discovered substances, including several samples of methamphetamine (varying in purity from sixty-two to ninety-six percent), ephedrine, and chloropseudoephedrine.
 
 
 6
 The government's expert witness, a DEA chemist, gave testimony that the building's laboratory was set up to manufacture methamphetamine, a Schedule II controlled substance. This opinion was based in part on the multiple samples of that substance found in the building in addition to the other chemicals, some of which could be used to manufacture methamphetamine. The expert also testified that the tank of hydrogen gas could have been used to convert the intermediate product of chloropseudoephedrine into methamphetamine. Also seized from the building was a notebook containing four equations for creating chloropseudoephedrine from ephedrine or pseudoephedrine.
 
 
 7
 There was evidence of dealings between Durr-Fillauer Medical, Inc. and defendant and Intermont, Inc. over a two-year period. The government's expert testified that most of the chemicals obtained from Durr-Fillauer could be used to manufacture methamphetamine. A representative of Durr-Fillauer, who personally dealt with the defendant, testified that the defendant personally ordered and picked up the chemicals and always paid cash, a rare procedure for such large purchases.
 
 
 8
 During the search pursuant to the warrant, the DEA chemist spoke with the defendant who stated that he was using ephedrine to make pseudoephedrine, that he was trying to organize a business involving drain cleaners, and that he was just a chemist trying to make a living. The DEA chemist stated that to her knowledge pseudoephedrine could not be made from ephedrine and that she was aware of no scientific authority that it could be so produced. She referred to an article written by another DEA chemist stating that pseudoephedrine could not be made from ephedrine. Defendant, who claimed to be a chemist for almost thirty years, stated that he had been informed of the conversion process by Kirksey, described by him also as a garage mechanic. Finally, the DEA chemist testified that she found no pseudoephedrine during the search of the building.
 
 
 9
 Defendant and his son voluntarily appeared at the offices of the DEA for interviews. Defendant again stated that he was a chemist and a chemical salesman, and that he established Intermont Products to make soaps, waxes, various types of cleaners, and a drain opener. He also asserted that he was making pseudoephedrine from ephedrine because the former was a much more valuable product than the latter. When informed that the samples seized from the building would be back from the DEA lab soon, however, the defendant responded, "when this comes back, you all got me." At trial, the defendant explained that what he meant by this statement was when the results were completed, "I'll be here."In order to impeach the defendant's credibility at trial, the government introduced evidence that the defendant had been convicted of a felony involving possession of cocaine in 1983. The government had previously filed during pretrial a notice that the prosecution might use this prior conviction against the defendant at trial. When the defendant took the stand at trial, however, for the first time defense counsel presented evidence that the prior conviction was for illegal possession of codeine, not cocaine. (Codeine is also a Schedule II controlled substance.) When the court asked defense counsel why she waited so long to correct the government's information that the conviction involved cocaine, the defendant's attorney responded only that the government should have known this.
 
 
 10
 The defendant was sentenced to a term of twenty years incarceration after conviction on count one and a concurrent term on count two. Appellant raises the following issues on appeal:
 
 ISSUES
 
 11
 1. Was there sufficient evidence of conspiracy to manufacture methamphetamine and the substantive count of manufacturing methamphetamine?
 
 
 12
 2. Was admission of evidence of the defendant's prior felony conviction reversible error?
 
 
 13
 3. Did defendant receive effective assistance of counsel?
 
 
 14
 4. Was there reversible error in the admission of certain evidence?
 
 I. Sufficiency of the Evidence
 
 15
 In reviewing the jury's verdict under a sufficiency of the evidence standard, the court must consider all of the evidence in the light most favorable to the prosecution. Jackson v. Virginia, 443 U.S. 307, 319 (1979). The relevant test is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of a crime beyond a reasonable doubt. 443 U.S. at 319. This test requires substantial deference to the trier of fact. See United States v. Ayotte, 741 F.2d 865, 867 (6th Cir.) (citations omitted), cert. denied sub nom Labodie v. United States, 469 U.S. 1026 (1984):
 
 
 16
 In considering ... a challenge [to the sufficiency of the evidence], this court does not sit as a trier of fact and may not enter into a de novo consideration of the evidence. The jury's verdict "cannot be reversed if there is substantial evidence to support the findings of guilt." Moreover, "[i]n considering the sufficiency of the evidence, we do not determine whether it establishes guilt beyond a reasonable doubt." If the evidence is such that a reasonable mind might fairly find guilt beyond a reasonable doubt, the issue is one for the jury. The evidence must be construed in a manner most favorable to the prosecution.
 
 
 17
 (Quoting United States v. Levinson, 405 F.2d 971, 985 (6th Cir.1968), cert. denied, 395 U.S. 906 (1969)). Defendant Jameson "bears a very heavy burden" in this regard. United States v. Vannerson, 748 F.2d 361, 362-63 (6th Cir.1984).
 
 
 18
 In light of the entire record, we find the defendant's argument in this regard to be untenable. The evidence is sufficient to sustain his conviction on both counts.
 
 
 19
 Under 21 U.S.C. Sec. 846, the government has proved three essential elements: (1) that a conspiracy existed, (2) that the accused knew of the conspiracy, and (3) that he knowingly and voluntarily joined it. United States v. Davis, 809 F.2d 1194, 1205 (6th Cir.), cert. denied, 107 S.Ct. 3234 (1987); United States v. Christian, 786 F.2d 203, 211 (6th Cir.1986); United States v. Thompson, 533 F.2d 1106 (6th Cir.), cert. denied, 429 U.S. 939 (1976); United States v. Bostic, 480 F.2d 965 (6th Cir.1973).
 
 
 20
 Circumstantial evidence supports a finding of the existence of a conspiracy and participation in the conspiracy, and defendant's knowledge of and voluntary participation in a conspiracy may be inferred from the surrounding circumstances. Christian, 786 F.2d at 211 (citing United States v. Vergara, 687 F.2d 57, 61 (5th Cir.1982)). Defendant's connection to a conspiracy need only be slight, and a conviction will not be reversed for a lack of evidence that the defendant knew every detail of the conspiracy. There was also sufficient evidence of aiding and abetting.
 
 II. Evidence of Prior Conviction
 
 21
 The defendant also contends that the trial court abused its discretion by admitting for impeachment purposes evidence of the defendant's prior felony conviction for possession of a Schedule II controlled substance. According to the defendant, it was prejudicial error for the trial judge to admit this evidence without first holding a hearing outside the jury's presence.
 
 
 22
 Nothing in the language of Rule 103(c) of the Federal Rules of Evidence requires a court to conduct a hearing outside the presence of the jury prior to the use of impeachment evidence of a prior felony conviction. The defendant, nevertheless, never requested a hearing outside the jury's presence when the evidence was presented at trial. Defendant cites no cases directing the trial court to conduct a sua sponte evidentiary hearing. In the related area of the admissibility of prior similar acts evidence under Rule 404 of the Federal Rules of Evidence, the Supreme Court has held that a district court is not required to conduct a preliminary hearing on the validity of the proffered evidence. Huddleston v. United States, 108 S.Ct. 1499 (1988); see also United States v. Schrock, 855 F.2d 327, 335 n. 11 (6th Cir.1988).
 
 
 23
 We find insufficient indication of prejudice through the prosecution's mistaken assertion that the prior conviction was for possession of cocaine rather than codeine. The defendant and his counsel knew before trial that the conviction was for possession of codeine, and they made no effort to challenge or correct the government's error. The district court properly instructed the jury when the evidence was admitted and during its charge that the prior conviction was being offered solely for the purpose of impeaching the defendant's credibility. The district court did not abuse its discretion to defendant's prejudice in handling this evidentiary matter.
 
 III. Ineffective Assistance of Counsel
 
 24
 The defendant's contention that he was denied effective assistance of counsel is based upon the assertion that his lawyer (1) failed to move, in limine, that the trial court consider the admissibility of the defendant's prior conviction, (2) failed to object at trial to the discussion of the prior conviction in front of the jury, and (3) failed to object to the introduction of other evidence.
 
 
 25
 Any claim of ineffective assistance of counsel must be reviewed pursuant to guidelines established by the Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984). Strickland establishes a two-pronged test for evaluating whether the quality of the defendant's counsel was ineffective. The defendant must show: (1) that counsel's performance was "deficient" under the sixth amendment, and (2) that the defendant actually prejudiced the defendant's case. Nothing in the record indicates that the defense counsel's performance under all the circumstances was constitutionally deficient or that any of the errors alleged by the defendant would constitute actual prejudice that would likely effect the outcome of the trial. The decision not to make a motion in limine objecting to the evidence of the defendant's prior conviction appears to have been a tactical decision.
 
 
 26
 The defendant's second contention, that the lawyer failed to object to the proffered evidence of the prior conviction, is simply incorrect. Defense counsel strenuously challenged the evidence both on grounds that it was inaccurate and that it was not properly admissible for impeachment purposes at trial. The defendant also contends that his trial counsel failed to object to the testimony concerning possession of methanphetamine by Kirksey or to evidence that was found in the defendant's wife's automobile outside the rented building. We find that counsel's failures in these respects do not comport with the Strickland standards based on the showing made before this court. Defendant would normally first make this contention to the trial court, which is more familiar with counsel's conduct during the course of trial and pretrial.
 
 
 27
 IV. Admissibility of the Government's Evidence
 
 
 28
 The defendant also objects to the admission of various items of evidence offered by the prosecution, including the arrest of Kirksey, the evidence seized from his wife's car, the defendant's income, and the purity and quantity of evidence seized. Regarding the methamphetamine samples retrieved from the wife's car, this evidence was clearly relevant to a determination of whether the defendant was engaged in the manufacture or possession of that drug. Evidence of the overall quantity and purity of the seized methamphetamine was relevant for the same purposes.
 
 
 29
 The defendant's primary argument concerns the government's questions of defendant about Kirksey's whereabouts, Kirksey's arrest on similar charges, and Kirksey's absence during closing arguments. The defense, however, made no objection to the government's questioning or closing argument at trial. This objection, therefore, has not been properly preserved for appeal. We will consider whether this line of inquiry constituted "plain error" mandating reversal.
 
 
 30
 The government did not seek to indict Kirksey nor did it make reference to Kirksey in any fashion as co-conspirator, or otherwise, in the indictment. Neither did the indictment allege that there were any conspirators except defendant and his son. We have some reservation under the circumstances about the government's effort to show that Kirksey, who was unquestionably involved with defendant at the plant or "laboratory" in question, was charged in another criminal proceeding with a similar offense. In any event, although we do not characterize the government's conduct regarding Kirksey in this case as error, we find that it would be harmless error because of the other strong evidence of defendant's involvement in the offenses charged.
 
 
 31
 Accordingly, we AFFIRM the conviction on both counts.
 
 
 
 *
 THE HONORABLE CHARLES W. JOINER, United States District Court for the Eastern District of Michigan, sitting by designation