**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 16a0021n.06

**No. 15-3086**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Jan 12, 2016
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| *Plaintiff-Appellee*, | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| v. | ) | NORTHERN DISTRICT OF OHIO |
| | ) | |
| RAYMOND BANTUM, | ) | |
| | ) | |
| *Defendant-Appellant*. | ) | **OPINION** |
| | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

**Before: CLAY and ROGERS, Circuit Judges; THAPAR, District Judge.**[*]

THAPAR, District Judge. Raymond Bantum appeals his conviction for conspiracy to distribute cocaine, arguing that insufficient evidence supported the jury's verdict. We affirm.

**I.**

Bantum was a member of a drug-trafficking conspiracy that distributed cocaine from California to Cleveland, Ohio. Alfredo Martinez, one of Bantum's co-defendants, obtained drugs from Mexico. He would then transport the drugs to Cleveland, Ohio, where Bantum would distribute them. Specifically, Martinez sent two multi-kilogram cocaine shipments to Bantum. Lawrence Donerson brought the first shipment from Pontiac, Michigan, to Bantum's house. R. 311 at 2584. There, Donerson met with four other men: Bantum, two of Bantum's contacts, and another individual that Bantum's contact knew, Darryl Whittington.

---

[*]Hon. Amul R. Thapar, United States District Judge for the Eastern District of Kentucky, sitting by designation.

R. 313 at 2940–41; R. 312 at 2729; R. 312 at 2861. Then Whittington and Bantum distributed the cocaine.

The second shipment arrived in Cleveland in a tractor-trailer. Donerson retrieved the cocaine from the trailer. R. 311 at 2593–94. The next day, Donerson called Bantum and one of Bantum's contacts from the first shipment to arrange distribution. R. 311 at 2588–89. Bantum, Bantum's contact, and Whittington split the cocaine to distribute. R. 311 at 2593–94. Donerson, Bantum, and Bantum's contact split the profits. *Id.*

Donerson, however, cut Bantum out of the third shipment when it arrived in Cleveland. Donerson did so because he had given Bantum about $10,000 to purchase cars, and Bantum never delivered the cars. R. 312 at 2820. And Donerson learned that Bantum's friends wanted to rob and potentially kill Donerson. R. 312 at 2741. As a result, Donerson gave the third shipment only to Bantum's contact for distribution. *Id.*

In May of 2013, the government charged Bantum and seven other individuals with conspiracy to distribute cocaine. R. 39 (superseding indictment). Bantum was also charged with two counts of unlawful use of a communications facility to facilitate drug trafficking.[1] *Id.* at 448. After a trial, a jury convicted Bantum of all three counts. R. 216 at 1616–18; R. 218 at 1624–25. The jury also found by special verdict that Bantum was responsible for distributing five or more kilograms of cocaine. *Id.*

---

[1] Bantum does not contest these counts on appeal.

**II.**

Bantum argues that insufficient evidence supported his conviction. Specifically, he contends that the government presented insufficient evidence to prove that (1) he was part of the conspiracy and (2) that he conspired to distribute five or more kilograms of cocaine. To evaluate a sufficiency claim like Bantam's, we view the evidence in the light most favorable to the government, drawing all inferences in the government's favor. *United States v. Conrad*, 507 F.3d 424, 432 (6th Cir. 2007); *see also Jackson v. Virginia*, 443 U.S. 307, 319 (1979). Then we ask whether a rational jury could have found the defendant guilty beyond a reasonable doubt based on that evidence. *Conrad*, 507 F.3d at 432.

There was plenty of evidence—direct and circumstantial—supporting Bantum's conviction. Multiple co-defendants testified that Bantum participated in two transactions involving multiple kilograms of cocaine. For example, Donerson estimated that he sold about 20 kilograms of cocaine to or through Bantum. R. 311 at 2579, 2595–96, 2602. Additionally, Darwin Demore (Bantum's contact and another co-conspirator) said that he, Bantum, and Donerson sold a total of eight kilograms in two transactions and split the profits. R. 312 at 2734–40, 2673, 2793. From this evidence alone, a reasonable jury could have found that Bantum conspired to distribute more than five kilograms of cocaine. *See United States v. Valdez*, 611 F. App'x 330, 335 (6th Cir. 2015) (holding that the defendant's presence at two meetings for purchases of large amounts of cocaine was sufficient to establish his participation in the conspiracy); *United States v. Robinson*, 547 F.3d 632, 641 (6th Cir. 2008) (stating that evidence of repeat purchases supports the inference that a

defendant is a co-conspirator, not merely a buyer or seller); *United States v. Martinez*, 430 F.3d 317, 334 (6th Cir. 2005) (holding that the defendant's involvement in repeat drug transactions with co-conspirators supported the inference that he was a co-conspirator); *United States v. Bourjaily*, 781 F.2d 539, 545 (6th Cir. 1986) (holding that the defendant's purchase or sale of a "large volume of narcotics"—in that case, one kilogram of cocaine— creates an inference that he is a willful member of the conspiracy). Thus, that evidence alone would allow us to deny Bantum's sufficiency claim.

But there was more. In addition to testimony about the two large transactions involving Bantum, wiretaps revealed phone conversations between Bantum and his co-conspirators about distributing large amounts of cocaine in the Cleveland area. R. 311 at 2299; R. 313 at 2964. Donerson and Demore testified that Bantum introduced his co-conspirators to his Cleveland contacts to further the objectives of the conspiracy. R. 312 at 2729; R. 313 at 2955. And Demore testified that Donerson had given Bantum nine or ten thousand dollars to purchase "stash" cars in which to hide drugs, thus showing that Bantum had significant responsibility within the conspiracy. *See United States v. Maliszewski*, 161 F.3d 992, 1007 (6th Cir. 1998).

Viewing all of this evidence in the light most favorable to the government, a rational jury could find that (1) there was an agreement to distribute cocaine among Bantum and his co-defendants; (2) Bantum knowingly and intentionally joined the conspiracy; and (3) Bantum participated in the conspiracy. *See Martinez*, 430 F.3d at 330. A rational jury

could also hold Bantum responsible for conspiring to distribute five or more kilograms of cocaine.

Bantum makes two arguments in response. First, he argues that he only had a buyer-seller relationship with Donerson. A buyer-seller relationship is not enough to establish participation in a conspiracy, "but further evidence indicating knowledge of and participation in the conspiracy can be enough to link the defendant to the conspiracy." *United States v. Wettstain*, 618 F.3d 577, 584 (6th Cir. 2010) (citation omitted). A defendant's link to a conspiracy can be inferred from the circumstances. *United States v. Brown*, 332 F.3d 363, 373 (6th Cir. 2003). As discussed above, there was evidence from which a reasonable jury could find that Bantum's relationship went far beyond that of a mere buyer, namely his participation in multiple transactions involving large amounts of cocaine from Donerson; his phone conversations with co-conspirators about distributing cocaine; and his promotion of the venture through introductions to other sellers and sales to Bantum's regular customers. In fact, Bantum himself stipulates that he was in Donerson's "supply chain." Because the evidence showed that Bantum's relationship with Donerson went far beyond that of a mere buyer-seller, Bantum's argument fails.[2]

---

[2] Bantum also argues that he was "merely associated" with Donerson and the other co-conspirators. Mere association does not establish conspiracy. *United States v. Bostic*, 480 F.2d 965, 968 (6th Cir. 1973). But evidence of "intentional participation in the transaction[s]" joins a defendant to a conspiracy. *Id.* Here, sufficient evidence showed that Bantum intentionally participated in at least two sales of cocaine.

Second, Bantum argues that a rational jury could not have held him responsible for distributing more than five kilograms of cocaine. He claims that Whittington's testimony[3] establishes that Bantum only sold four kilograms of cocaine, not five or more. R. 312 at 2861. As an initial matter, Whittington's testimony is internally inconsistent and the jury might well have interpreted his testimony to suggest that Bantum distributed six kilograms of cocaine rather than four. More importantly, though, jurors are permitted to make credibility determinations and believe some witnesses over others. *See United States v. Deitz*, 577 F.3d 672, 682 (6th Cir. 2009). And the Court cannot now substitute its own conclusion about witness credibility and the weight of the evidence for the jury's. *See id.* The jury here was fully entitled to reject Whittington's testimony about the cocaine altogether and rely instead on Donerson's or Demore's. Given that those two men both testified that Bantum was responsible for more than five kilograms of cocaine, a reasonable jury could have found exactly that. Therefore, we affirm.

---

[3] Whittington, when asked how much cocaine was involved in the first transaction, stated that: "I think it was 1.5 kilo, because the second time it was – it was six all together. Three – it was two and a half. Yes. One and a half, I believe." R. 312 at 2871–72. Bantum interprets that statement to mean that he only sold four kilograms of cocaine: 2.5 + 1.5 = 4. But the phrase "six all together" could also mean that Bantum distributed six kilograms of cocaine.